Richard I. Yankwich, (CA Bar No. 089924)
richard.yankwich@dlapiper.com
Aaron Wainscoat, (CA Bar No. 218339)
aaron.wainscoat@dlapiper.com
Rajiv Dharnidharka, (CA Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
DLA Piper US LLP
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel:  (650)833-2068
Fax:  (650)687-1207

Paul A. Taufer, (PA Bar No. 58,934)
paul.taufer@dlapiper.com
Darius C. Gambino, (PA Bar No. 83,496)
darius.gambino@dlapiper.com
Michael L. Burns IV (PA Bar No. 204,365)
michael.burns@dlapiper.com
DLA Piper US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA  19103
Tel: (215) 656-3385
Fax: (215) 656-2498 or 2499

Attorneys for ZIGBEE ALLIANCE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IP CO., LLC and SIPCO, LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>CELLNET TECHNOLOGY, INC., TROPOS NETWORKS, INC., HUNT TECHNOLOGIES, LLC and B&L TECH COMPANY, INC.,<br><br>  Defendants. | CASE NO.  08-mc-80126-MMC<br>_____<br><br>Civil Action File No.<br>1:06-CV-3048-JEC<br>United States District Court<br>For the Northern District of Georgia<br><br>**NON-PARTY ZIGBEE ALLIANCE'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND REQUEST FOR SANCTIONS**<br><br>Date:   TBD<br>Time:  TBD<br>Court:  Hon. Bernard Zimmerman |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND ................................................................................................................. 1
    A. The ZigBee Alliance ................................................................................................ 1
    B. IP Co., LLC and SIPCO, LLC ................................................................................ 2
III. MEMORANDUM AND POINTS OF AUTHORITIES .................................................... 4
    A. The Attorney-Client Privilege Applies .................................................................... 4
        1. DLA Piper Is Counsel To ZigBee And Its Members ................................... 4
        2. ZigBee's Members Were Acting for ZigBee ................................................ 6
        3. The Common Interest Doctrine Applies ....................................................... 7
        4. The Communications At Issue Are Permissible Third Party Disclosures ................................................................................................... 9
    B. The Work Product Privilege Also Applies ............................................................ 10
    C. ZigBee is Entitled to Reasonable Expenses and Sanctions Because IPCO's Discovery Demands Are Abusive ........................................................................... 11
IV. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**CASES**

*AT&T Corp. v. Microsoft Corp.*,
    2003 U.S. Dist. LEXIS 8710 (N.D. Cal. Apr. 18, 2003) ............................... 6, 7, 8, 10, 11

*Benge v. Superior Court*,
    131 Cal. App. 3d 336 (1982) ............................................................................. 4, 5, 9, 10

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004) ................................................................................ 12

*Cram v. Elec. Data Sys. Corp.*,
    2008 U.S. Dist. LEXIS 5703 (S.D. Cal. Jan. 23, 2008) .......................................... 11, 12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
    115 F.R.D. 308 (N.D. Cal. 1987) .............................................................................. 7, 8

*In re Grand Jury Subpoena*,
    406 F. Supp 381 (S.D.N.Y. 1975) ................................................................................ 7

*In re Grand Jury Subpoenas*,
    902 F.2d 244 (4th Cir. 1990) ........................................................................................ 7

*Lectrolarm Custom Sys. v. Pelco Sales, Inc.*,
    212 F.R.D. 567 (E.D. Cal. 2002) .............................................................................. 7, 8

*Modesto Irrigation Dist. v. Gutierrez*,
    2007 U.S. Dist. LEXIS 21949 (E.D. Cal. Mar. 8, 2007) ......................................... 7, 8, 9

*Nemirofsky v. Seok Ki Kim*,
    523 F. Supp. 2d 998 (N.D. Cal. 2007) ........................................................................ 4, 5

*Robin Singh Educ. Servs. v. Excel Test Prep.*,
    2004 U.S. Dist. LEXIS 23176 (N.D. Cal. Nov. 9, 2004) ............................................. 12

*U.S. v. LeCroy*,
    348 F. Supp. 2d 375 (E.D. Pa. 2004) ............................................................................ 7

*U.S. v. McPartlin*,
    595 F.2d 1321 (7th Cir. 1979), *cert. denied*, 444 U.S. 833 (1979) ................................. 7

*United States v. Ohio Edison Co.*,
    2003 U.S. Dist. LEXIS 25029 (S.D. Ohio Jan. 6, 2003) ............................................ 5, 7

**STATUTES**

Cal. Evid. Code § 952 ............................................................................................................ 9

Cal. Evid. Code § 954 ................................................................................................... 5, 6, 9

Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 12

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Fed. R. Civ. P. 26(g) .................................................................................................................. 11

Fed. R. Civ. P. 26(g)(1)(B)(ii)..................................................................................................... 11

Fed. R. Civ. P. 26(g)(3)...................................................................................................... 1, 11, 13

Fed. R. Civ. P. 37(a)(5)(B).................................................................................................. 1, 11, 13

Fed. R. Civ. P. 45(c)(1) ....................................................................................................... 1, 11, 13

## OTHER AUTHORITY

Northern District Local Rule 37-2 ............................................................................................... 12

Supreme Court Standard 503(b).................................................................................................... 8

Non-Party ZigBee Alliance ("ZigBee") hereby submits this Opposition to a Motion to Compel filed by Plaintiffs IP Co., LLC and SIPCO, LLC (collectively, "IPCO"). This Opposition is based on the present Memorandum and Points of Authorities, as well as the Declarations of William Chase ("Chase Decl.") and Paul Taufer ("Taufer Decl.") filed herewith.

## I. **INTRODUCTION**

There is no legal or equitable basis upon which to grant the Motion to Compel. Given the fact that the patent claims in the present case are stayed, it is inexplicable why IPCO would: (1) serve a subpoena on ZigBee requesting patent documents which are privileged and completely unrelated to the patent at issue in this case, and (2) file a Motion to Compel on such documents. All of the documents requested by this Motion to Compel are clearly irrelevant to the present proceeding, and moreover are subject to one or more of the attorney-client privilege, the work product privilege, and/or the common interest doctrine. In order to avoid this type of frivolous motion, ZigBee voluntarily agreed to produce some 737 documents which were requested by IPCO. Some months ago, ZigBee also provided IPCO with a detailed Privilege Log which included, *inter alia*, the privilege asserted for each of the documents at issue here. However, IPCO was not satisfied with the assertions of privilege therein, and instead chose to file this retaliatory and baseless motion for the sole purpose of harassing ZigBee.[1]

In accord with the above, ZigBee seeks an Order: (1) denying IPCO's Motion to Compel, and (2) awarding ZigBee its reasonable expenses and fees incurred in opposing the Motion to Compel, pursuant to Rules 26(g)(3), 45(c)(1) and 37(a)(5)(B).

## II. **BACKGROUND**

### A.   **The ZigBee Alliance**

At the turn of the century, wireless providers saw a need for a cost-effective, standards-based wireless networking solution that supported low data-rates, low-power consumption, security and reliability. See Chase Decl. ¶2. To achieve these goals, a non-profit corporation

---

[1] These parties are not strangers to one another. In response to various threats and actions on the part of IPCO directed toward ZigBee and its members, ZigBee anonymously filed Requests for Reexamination of two (2) of IPCO's patents on or about April 2006. ZigBee believes that the prior subpoena, and this Motion to Compel, are in direct response to ZigBee's actions.

called the 'ZigBee Alliance' was formed and incorporated in 2002. See Id. ¶3. ZigBee's goal was, and is, to provide consumers with the ultimate in flexibility, mobility, and ease of use, by building wireless intelligence and capabilities into everyday devices, such as broadband portals, utility metering systems and home thermostats. See Id. ¶4.

Since its formation, ZigBee has become a global organization of more than 270 member companies.[2] See Id. ¶5. ZigBee membership includes worldwide technology providers, such as Texas Instruments and Motorola, as well as smaller original equipment manufacturers. See Id. ¶6.

### B. IP Co., LLC and SIPCO, LLC

IP Co., LLC and SIPCO, LLC (collectively, "IPCO") are holding companies formed for the sole purposes of licensing and enforcing patents in the wireless technology field. See Taufer Decl. ¶¶8-9, Exs. C-D. IPCO neither manufactures nor sells products. See Taufer Decl. ¶9, Ex. D. Instead, IPCO generates revenue through the aggressive assertion of patents against companies (like ZigBee and its members) who actually invest in researching and developing technology for the everyday consumer. Id. In accordance with its business model, IPCO has filed numerous patent infringement lawsuits since 2005. See Taufer Decl. ¶10, Ex. E.

IPCO has specifically targeted ZigBee and its members for more than two years. For example, IPCO filed suit against Cellnet Technology, Inc. ("Cellnet"), a ZigBee member, on October 14, 2005. See Taufer Decl. ¶11, Ex. F.[3] Furthermore, the present suit is another action against Cellnet, and also includes counts against ZigBee member Hunt Technologies, LLC ("Hunt"). IPCO has also recently filed suit against ZigBee members Itron Inc., Eaton Corp. and Centerpoint Technology, Inc. See Taufer Decl. ¶13, Ex. H. Thus, it is clear that IPCO's business model is focused on litigating against the wireless community.

In response to IPCO's threats of litigation against ZigBee members, and in an effort to protect such members, ZigBee consulted DLA Piper US LLP ("DLA Piper") regarding several of IPCO's patents involved in a then-pending litigation against Cellnet in November 2005. See

---

[2] A list of all member companies is attached as Exhibit A to the Chase Decl. See Chase Decl. ¶ 7, Ex. A.
[3] ZigBee was aware of IPCO at least as early as April 2005, when IPCO brought suit against ZigBee member Elster Electricity LLC. See Taufer Decl. ¶12, Ex. G.

1  Chase Decl. ¶¶8-10.  In particular, DLA Piper reviewed US Pat. Nos. 6,044,062 (the "'062
2  Patent") and 6,249,516 (the "'516 Patent") (collectively, the "Reexam Patents").  See Id. ¶10.
3  During this review process, DLA Piper attorneys spoke with not only ZigBee personnel, but also
4  with ZigBee member personnel.  See Chase Decl. ¶11.

5  At the conclusion of DLA Piper's review, ZigBee filed for reexamination of the
6  Reexamination Patents at the United States Patent and Trademark Office ("USPTO").  See Taufer
7  Decl. ¶¶2-4.  Subsequent to the USPTO authorizing reexamination of the Reexamination Patents,
8  a defendant in yet another patent infringement case filed by IPCO (Tropos Networks, Inc.) moved
9  to stay the action pending the outcome of the reexaminations.  See Taufer Decl. ¶5, Ex. A at 1.
10 The court not only granted a stay of that action, but also *sua sponte* stayed another action
11 involving the same patents against ZigBee member Cellnet.  See Id. at 4-5.

12 Shortly thereafter IPCO, now being temporarily foreclosed from proceeding with its
13 patent infringement counts on the Reexamination Patents, served subpoenas on ZigBee and others
14 in this action requesting documents regarding on the reexaminations.  See Dkt. Nos. 176, 268,
15 289, 297, 298, 309, 314 and 328.  ZigBee timely and properly objected to the subpoena for,
16 among other things, relevance because the present case involves only US Pat. No. 7,103,511 (the
17 "'511 Patent"), which is not one of the Reexamination Patents.[4]  See Taufer Decl. ¶6.  IPCO
18 withdrew the subpoena, and ZigBee stipulated to the production of certain non-privileged
19 materials as an alternative to a costly motion to compel proceeding, which IPCO was
20 threatening.[5]  See Chase Decl. ¶14; Taufer Decl. ¶7.  As part of that production, ZigBee produced
21 the Privilege Log which contains the documents at issue here.  See Taufer Decl. ¶14, Ex. I.

22 It is clear to ZigBee that this Motion to Compel (and the earlier subpoena) comprise
23 nothing more than the retaliatory tactics of a scorned patentee.  The documents requested are not
24 relevant to the issues in this case, and more importantly, are privileged.  For the reasons expressed
25 below, ZigBee asks the Court to deny IPCO's motion.

---

[4] The Court in this action has also bifurcated IPCO's patent and breach of contract claims, and stayed the patent claims.  Documents related to the reexaminations of other patents could not possibly be relevant or probative on the breach of contract issues.

[5] As agreed by the parties, that production included the Privilege Log which is the subject of this motion.

### III. MEMORANDUM AND POINTS OF AUTHORITIES

All of the documents listed on ZigBee's Privilege Log are privileged under one or more of the attorney-client privilege, the work product privilege, and/or the common interest doctrine. The bulk of the communications in question relate to DLA Piper's analysis of the Reexamination Patents, and comprise correspondence directly between DLA Piper attorneys and ZigBee, or ZigBee's members. The remainder of the documents comprise communications between ZigBee members at the direction of DLA Piper attorneys, and are therefore at least attorney work product and/or common interest materials. For the reasons below, ZigBee requests that the Court deny the Motion to Compel, and award ZigBee sanctions in the form of attorneys' fees and reasonable expenses for defending this abusive and baseless motion.

#### A. The Attorney-Client Privilege Applies

The attorney client privilege applies to most all of the withheld documents because in each case (1) DLA Piper was acting as attorney for ZigBee and its members, (2) ZigBee's members were acting for ZigBee (or its attorneys) in making the communications; (3) the communications are privileged under the common interest doctrine, and/or (4) the communications are privileged as permissible third party disclosures.

##### 1. DLA Piper Is Counsel To ZigBee And Its Members

The attorney-client privilege applies when "(1) legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at the client's instance, permanently protected, (7) from disclosure by the client or by the legal advisor, (8) unless the protection be waived." Nemirofsky v. Seok Ki Kim, 523 F. Supp. 2d 998, 1000 (N.D. Cal. 2007) (citations omitted).

The attorney-client privilege serves to "promote the relationship between attorney and client by safeguarding the confidential disclosures of the client and the advice given by the attorney." Benge v. Superior Court, 131 Cal. App. 3d 336, 334 (1982). Public policy supports a liberal construction of the privilege, which must be zealously protected. Id.; Nemirofsky, 523 F. Supp. 2d at 1001. In fact, "[a]lmost any act, done by the client in the sight of the attorney and

during the consultation, may conceivably be done by the client as the subject of a communication, and the only question will be whether, in the circumstances of the case, it was intended to be done as such." Benge, 131 Cal. App. 3d at 345 (citations omitted).

A "client" within the meaning of the attorney-client privilege can include "partnerships, corporations, limited liability companies, associations and other groups and entities." Cal. Evid. Code § 954 (2008). In such a situation, the entity is the client and the attorney-client communications are made through individuals acting for the entity. Nemirofsky, 523 F. Supp. 2d at 1001; see also Benge, 131 Cal. App. 3d at 348 (finding an attorney-client privilege with respect to all communications made during a meeting between a union, its counsel and union members regarding alleged lead dust at a plant); United States v. Ohio Edison Co., 2003 U.S. Dist. LEXIS 25029, at *11-12 (S.D. Ohio Jan. 6, 2003) (finding an attorney-client privilege for communications involving an association, the association's members and counsel for the association for issues common to some or all of the association's members).

In this case, DLA Piper was clearly acting as counsel not only for ZigBee, but for ZigBee's members as well. This should end the inquiry. ZigBee and its members shared the common purpose of defending against patent suits from IPCO, and all of the communications at issue here were confidential between DLA Piper, ZigBee and ZigBee members for that express purpose. At the time the advice was given, IPCO had already commenced at least two suits against ZigBee members, and ZigBee and its other members had no reason to believe that they would not be next. It was directly out of this fear of suit that ZigBee consulted DLA Piper regarding the Reexamination Patents. Due to the clear implications for ZigBee's members, some members chose to participate in these discussions. See Chase Decl. ¶¶11-13. All the parties involved understood the confidential nature of the communications, and had an expectation of privacy. See Chase Decl. ¶¶15.

The present situation is similar to that in Ohio Edison. In that case, communications between a trade association's counsel and its members, keeping the association's members apprised of government regulations, were found to be privileged. Ohio Edison, 2003 U.S. Dist. LEXIS 25029, at *11-12. In this case, DLA Piper is counsel to ZigBee, which is a trade

association. Thus, communications between DLA Piper and ZigBee's members regarding the validity of IPCO's patents should likewise be privileged.

### 2. ZigBee's Members Were Acting for ZigBee

In addition to communications between attorney and client, the attorney-client privilege may also extend to communications <u>between non-lawyers</u> if the parties intend to seek legal advice regarding the communications. AT&T Corp. v. Microsoft Corp., 2003 U.S. Dist. LEXIS 8710, at *7-8 (N.D. Cal. Apr. 18, 2003). These communications and any information compiled are privileged if "the legal implications were understood at the beginning of the inquiry and the communications were covered by a veil of confidentiality." <u>Id.</u> at *8.

Assuming there is no attorney-client privilege found between DLA Piper and ZigBee's members, the communications at issue between: (1) DLA Piper attorneys and ZigBee member personnel, and (2) among ZigBee and ZigBee member personnel should still be considered privileged because they all concerned the rendering of legal advice.[6] To wit, the purpose of these communications was legal advice regarding the Reexamination Patents. <u>See</u> Chase Decl. ¶¶8-11. At the time the advice was given, IPCO had already asserted the Reexamination Patents against ZigBee member Cellnet, and ZigBee was preparing for future litigation. <u>See</u> Chase Decl. ¶¶8-11. Although some of the communications were solely between ZigBee members, those communications were taken at the direction of counsel, and/or for the express purpose of seeking legal advice. See, <u>AT&T</u>, 2003 U.S. Dist. LEXIS 8710 at *7-8; Chase Decl. ¶¶11-13.

There is no question that all of the communications between DLA Piper, ZigBee and ZigBee members sought legal advice on the Reexamination Patents, from a professional legal advisor (i.e., DLA Piper) and were made in confidence.[7]

Under Cal. Evid. Code § 954, ZigBee is considered a professional organization, which can only communicate with counsel through its representatives <u>and members</u> (emphasis added). As

---

[6] The communications between ZigBee's counsel, ZigBee and/or ZigBee's members are found in documents 1-2, 4-5, 7-40, 43-55, 58, 63, 66, 69-141, 143, 146-152, 154-159, 162-164, 166, 169-171, 174, 176, 178-181, 184-210, 211-212, 215, 218-220, 222 and 224. The communications between ZigBee and ZigBee's members are found in documents 3, 6, 41-42, 56-57, 59-62, 64-65, 67-68, 142, 144-45, 153, 160-61, 165, 167-68, 172-73, 175, 177, 182-83, 213-14, 216-17, 221, 223.

[7] Even though it was not necessary given the circumstances, the persons participating in these communications from the ZigBee members were apprised of the confidential nature of the communications. See Chase Decl. ¶15.

noted above, the attorney client privilege attaches to members of an association in communications with counsel for the association. See Ohio Edison, 2003 U.S. Dist. LEXIS 25029, at *11-12. Additionally, there has been no allegation by IPCO that ZigBee in any way waived its privilege with DLA Piper. With regard to communications between ZigBee members, these communications are also subject to the attorney-client privilege because the members understood that these communications were confidential, and intended to seek legal advice as the end result of the communications. AT&T, 2003 U.S. Dist. LEXIS 8710 at *7-8.

### 3.    The Common Interest Doctrine Applies

Under the common interest doctrine, communications such as notes, memoranda, and statements made among counsel and their clients with a common interest are protected from disclosure. In re Grand Jury Subpoena, 406 F. Supp 381, 384-94 (S.D.N.Y. 1975). The reason for this rule is to allow persons who share a common interest in litigation to "be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990). It is not necessary that the two individuals or entities' interests be to be totally congruent for the privilege to apply. U.S. v. McPartlin, 595 F.2d 1321, 1336-37 (7th Cir. 1979) (citations omitted), cert. denied, 444 U.S. 833 (1979). Nor is it necessary for litigation to be pending against both parties, as the common interest privilege applies "whether an action is ongoing or contemplated." In re Grand Jury Subpoenas, 902 F.2d at 249; Lectrolarm Custom Sys. v. Pelco Sales, Inc., 212 F.R.D. 567, 572 (E.D. Cal. 2002). See also U.S. v. LeCroy, 348 F. Supp. 2d 375, 381 (E.D. Pa. 2004) (stating "a person need not be a litigant to be a party to a going defense agreement" and noting that the joint defense privilege applies to parties or potential parties sharing a common interest in the outcome of a particular claim.).

The common interest doctrine applies to a communication when "(1) [a] communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." Modesto Irrigation Dist. v. Gutierrez, 2007 U.S. Dist. LEXIS 21949, at *45-46 (E.D. Cal. Mar. 8, 2007) (citations omitted); see also Hewlett-Packard Co. v. Bausch & Lomb, Inc., 115 F.R.D. 308, 309-12 (N.D.

1   Cal. 1987) (holding that a disclosure to a non-party did not waive the attorney-client privilege);
2   Supreme Court Standard 503(b) (recognizing the common interest privilege).  A complete unity
3   of interests between the parties is not necessarily required, and common interest may exist even
4   where parties have substantially adverse interests.  Modesto, 2007 U.S. Dist. LEXIS 21949, at
5   *45-46.

6   For example, the common interest exception applies to communications between separate
7   government agencies.  Modesto, 2007 U.S. Dist. LEXIS 21949, at *55-56.  The common interest
8   exception also applies to communications with a non-party to litigation.  Hewlett-Packard Co.,
9   115 F.R.D. at 312; AT&T, 2003 U.S. Dist. LEXIS 8710 at *17; Lectrolarm Custom Sys., 212
10  F.R.D. at 572.

11  In the instant case, even if there is no direct privilege found between DLA Piper and
12  ZigBee's members, the common interest doctrine extends the attorney-client privilege between
13  DLA Piper and ZigBee to encompass such communications.  These communications are subject
14  to the common interest doctrine because: (1) the parties share a common interest of protecting
15  against the threat of patent litigation by IPCO, (2) the communications were made in furtherance
16  of that common interest, and (3) the underlying attorney-client privilege, that IPCO admits exists,
17  between DLA Piper and ZigBee has not been waived.

18  As noted above, the communications at issue on the Privilege Log all relate to legal advice
19  regarding the Reexamination Patents and related litigation matters.  The common goal of ZigBee
20  and its members is to determine whether IPCO's patents are applicable to their technology, and
21  more importantly, if IPCO's patents are even valid.  The only way to accomplish this was through
22  discussions between ZigBee, its counsel, and ZigBee's members.  These communications
23  remained confidential as between ZigBee and its members, and were not disclosed to any other
24  parties.  See Chase Decl. ¶16.

25  As for IPCO's arguments, since there is no requirement that litigation be commenced
26  against parties with a common interest, the presence (or absence) of litigation between ZigBee, its
27  members and IPCO is irrelevant.  Even more irrelevant are the six 'elements' of common interest
28  that IPCO lists in the motion, which have no basis in law or statute.  See Motion to Compel at 6.

1  IPCO tacitly admits the same by failing to provide any case sites supporting this bald assertion. In fact, the cases directly contradict IPCO's statements. See, e.g., Modesto, 2007 U.S. Dist. LEXIS 21949, at *4-14 (no reference to a joint defense agreement executed prior to application of common interest doctrine). There are only three requirements for application of the common interest doctrine, they are listed above, and ZigBee and its members have unquestionably met all three.

### 4. The Communications At Issue Are Permissible Third Party Disclosures

Even assuming, there is no attorney-client privilege found between DLA Piper and ZigBee's members, and the common interest doctrine is found not to apply, the communications at issue may still be protected from disclosure as permissible third party disclosures. As noted above, the attorney-client privilege includes confidential communications between a client and their lawyer. Cal. Evid. Code § 954 (2008). "Confidential communications" include communications to third parties when the third parties "are present to further the interest of the client in the consultation of those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." Id. § 952.

For example, the attorney-client privilege has been held to extend to communications between an association's lawyers and its members even if alleged "non-essential" third parties were present during the communications. Benge, 131 Cal. App. 3d at 342, 347. In Benge, the defendants sought discovery of communications between union members and the union's attorneys. Id. at 277. The union had held meetings to inform its members of their legal rights concerning lead and dust conditions at a plant where the union members worked. Id. Counsel for the union was present at the meetings, as were union members not involved in the pending lawsuit. Id. at 342. The defendants argued that the presence of the union members who were not also parties to the lawsuit, waived the attorney-client privilege. The court disagreed, and found, *inter alia*, that (1) an attorney-client privilege existed between the separate union members and the union's chosen counsel, and (2) the presence of the "non-essential" union members did not

waive the privilege because each had a common goal of receiving workers' compensation legal advice. Id. at 347-48.

Assuming, *arguendo*, that communications between ZigBee's members and DLA Piper are not privileged (a proposition directly contradicted by the holding in Benge), IPCO does not dispute that communications between ZigBee and DLA Piper are privileged, and the inclusion of the ZigBee members in those communications does not waive the privilege because the participation of the ZigBee members was reasonably necessary to accomplish the intended goal (i.e., assessing the litigation threat posed by IPCO and the validity of IPCO's patents). See Chase Decl. ¶¶12-13. Much like the presence of the non-party union members in Benge, the presence of ZigBee members was essential to any discussion of IPCO and its patents.

### B. The Work Product Privilege Also Applies

Some of the documents listed in the Privilege Log are also privileged under the work product privilege.[8] The work product privilege applies to "1) a document or tangible thing, 2) which was prepared in anticipation [of litigation], and 3) was prepared by or for a party, or by or for its representative." AT&T Corp. v. Microsoft Corp., 2003 U.S. Dist. LEXIS 8710, at *13 (N.D. Cal. 2003) (citations omitted).

Work product privilege extends not only to documents prepared for a party and its representative, but also to documents prepared by non-parties. Id. at *16. The work product privilege applies to third party documents if the third party "is in substance equally concerned with the outcome of litigation and documents are created with an eye toward litigation." Id. at *16 (citations and internal punctuation omitted).

In the instant case, the work product privilege applies because (1) the e-mails and attachments in question are clearly documents; (2) the e-mails and attachments were prepared in anticipation of litigation with IPCO; and (3) the e-mails and attachments were prepared by or for ZigBee, and/or by or for ZigBee's members. See Chase Decl. ¶¶8-13.

As noted above, prior to the communications at issue IPCO had asserted the

---

[8] The work product privilege applies to at least documents 140, 145, 153, 160, 161, 165, 167, 168, 177, 182, 183, 221 and 223.

1  Reexamination Patents against various ZigBee members. See Id. ¶8. As a result of these
2  assertions, ZigBee and several of ZigBee's members became concerned that IPCO would attempt
3  to bring suit against them. See Id. ¶¶8-9. To address this concern, ZigBee undertook a review of
4  IPCO's patents (with the advice and assistance of DLA Piper), that involved an analysis of the
5  validity of the patents. The communications and analysis lead directly to the filing of the requests
6  for reexamination, which in turn lead to a stay of the above-referenced patent infringement action
7  against ZigBee member Cellnet. Thus, it is clear that the e-mails and attachments at issue were
8  all prepared in 'anticipation of litigation.'

9  IPCO argues that the work product privilege is unavailable because ZigBee is not a party
10 to the present case. See Motion to Compel at 7. However, as noted above, the work product
11 privilege is available to non-parties if those parties are "equally concerned with the outcome of
12 litigation and documents are created with an eye toward litigation." AT&T, 2003 U.S. Dist.
13 LEXIS 8710, at *13. ZigBee and its members are clearly concerned with the outcome of the
14 present litigation, as well as the outcome of the various other litigations IPCO has levied against
15 ZigBee members. See Chase Decl. ¶¶8, 12-13. Accordingly, the work product privilege should
16 apply to the above-referenced documents.

### C. ZigBee is Entitled to Reasonable Expenses and Sanctions Because IPCO's Discovery Demands Are Abusive

19 Discovery must be conducted in a responsible manner. See, Fed. R. Civ. P. 26(g).
20 Reasonableness extends to subpoenas, which must be crafted to "avoid imposing undue burden or
21 expense on a person subject to the subpoena." Id. 45(c)(1). Moreover, discovery requests cannot
22 be used improperly such as to harass. Id. 26(g)(1)(B)(ii). Failure to adhere to these requirements
23 may result in sanctions being levied against the offending party. Id. 26(g)(3), 45(c)(1).

24 Notwithstanding the above rules, the denial of a motion to compel entitles the non-movant
25 to "reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ.
26 P. 37(a)(5)(B); see also Cram v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5703, at *9 (S.D.
27 Cal. Jan. 23, 2008) (finding that a motion to compel was not meritorious and awarding reasonable
28 expenses under Rule 37(a)(5)(B)). A movant can escape this requirement only if the motion to

1  compel is "substantially justified or other circumstances make an award of expenses unjust." Id.

2  In the instant case, expenses and sanctions are warranted because IPCO's discovery
3  demands on ZigBee have been abusive. First, the information sought in the subpoena is in no
4  way relevant to the breach of contract claims now pending in this case. As noted above, the
5  patent claims in this case are for an entirely different patent (i.e., the '511 Patent), and in any
6  event have been stayed pending the outcome of the breach of contract claims. IPCO's service of
7  the subpoena on ZigBee is a direct violation of Judge Carnes' Order, not to mention a ham-
8  handed attempt to obtain irrelevant information from a non-party. In particular, the breach of
9  contract claims are solely between IPCO and Cellnet, Tropos, Hunt, and B&L, and
10 communications between ZigBee, its counsel, and ZigBee's members regarding the
11 Reexamination Patents are in no way relevant to such claims.

12 Since the information sought in the subpoena and this Motion to Compel is patently
13 irrelevant to the present proceeding, it appears that the same were served either to harass ZigBee,
14 or to improperly fish for information to fuel additional lawsuits. See Robin Singh Educ. Servs. v.
15 Excel Test Prep., 2004 U.S. Dist. LEXIS 23176, at *5 (N.D. Cal. Nov. 9, 2004) (denying a
16 motion to compel a subpoena response because the movant failed to meet its burden to show
17 relevance); see also Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While
18 Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based
19 on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past
20 wrongdoing not related to the alleged claims or defenses"). Either way, the information sought is
21 irrelevant and privileged, and IPCO has no reasonable basis for demanding it.[9]

22 In sum, IPCO's service of the subpoena and bringing of this Motion to Compel in the face
23 of an Order staying all patent-related discovery comprises an abuse of the discovery process, and
24 should result in the imposition of sanctions against IPCO in the amount of ZigBee's reasonable

---

[9] IPCO has similarly failed to address any of ZigBee's stated objections to the subpoena, as required under Local Rule 37-2, which states that motions to compel "must set forth each request in full, followed immediately by the *objections* and/or responses thereto." See L.R. 37-2 (emphasis added).

costs and attorneys' fees incurred in defending the Motion to Compel.[10]

## IV. CONCLUSION

For the foregoing reasons, ZigBee respectfully requests that the Court: (1) deny IPCO's Motion to Compel; and (2) award ZigBee sanctions in the form of reasonable expenses and attorneys' fees pursuant to Rules 26(g)(3), 45(c)(1) and 37(a)(5)(B).

Dated: July 1, 2008

DLA PIPER US LLP

/s/ Rajiv Dharnidharka
Rajiv Dharnidharka
Attorney for ZigBee Alliance

Counsel for Non-Party ZigBee Alliance:

Paul A. Taufer
Darius C. Gambino
Michael L. Burns IV
DLA Piper US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Tel. (215) 656-3300
Fax. (215) 656-2498 or 2499

---

[10] IPCO has already been sanctioned $33,611.00 in a prior case against Cellnet for failing to advance claims relating to the '062 Patent (one of the Reexamination Patents), which forced Cellnet to file an unnecessary motion to dismiss. See Taufer Decl. ¶15.