Richard I. Yankwich, (CA Bar No. 089924)
richard.yankwich@dlapiper.com
Aaron Wainscoat, (CA Bar No. 218339)
aaron.wainscoat@dlapiper.com
Rajiv Dharnidharka, (CA Bar No. 234756)
rajiv.dharnidharka@dlapiper.com
DLA Piper US LLP
2000 University Avenue
East Palo Alto, CA 94303-2215
Tel: (650)833-2068
Fax: (650)687-1207

Paul A. Taufer, (PA Bar No. 58,934)
paul.taufer@dlapiper.com
Darius C. Gambino, (PA Bar No. 83,496)
darius.gambino@dlapiper.com
Michael L. Burns IV (PA Bar No. 204,365)
michael.burns@dlapiper.com
DLA Piper US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
Tel: (215) 656-3385
Fax: (215) 656-2498 or 2499

Attorneys for ZIGBEE ALLIANCE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IP CO., LLC and SIPCO, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>CELLNET TECHNOLOGY, INC., TROPOS NETWORKS, INC., HUNT TECHNOLOGIES, LLC and B&L TECH COMPANY, INC.,<br><br>        Defendants. | CASE NO. 08-mc-80126-MMC<br>_____<br><br>Civil Action File No.<br>1:06-CV-3048-JEC<br>United States District Court<br>For the Northern District of Georgia<br><br>**NON-PARTY ZIGBEE ALLIANCE'S AMENDED OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date: August 13, 2008<br>Time: 10:00 AM<br>Court: Hon. Bernard Zimmerman |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. BACKGROUND ............................................................................................................. 1
    A. The ZigBee Alliance ........................................................................................... 1
    B. IP Co., LLC and SIPCO, LLC ............................................................................ 2
III. MEMORANDUM AND POINTS OF AUTHORITIES ................................................. 4
    A. The Attorney-Client Privilege Applies ............................................................... 4
        1. DLA Piper Is Counsel To ZigBee And Its Members ............................... 4
        2. ZigBee's Members Were Acting for ZigBee ........................................... 6
        3. The Common Interest Doctrine Applies ................................................... 7
        4. The Communications At Issue Are Permissible Third Party Disclosures ................................................................................................ 9
    B. The Work Product Privilege Also Applies ....................................................... 10
    C. ZigBee is Entitled to Reasonable Expenses and Sanctions Because IPCO's Discovery Demands Are Abusive ..................................................................... 11
IV. CONCLUSION .............................................................................................................. 13

# TABLE OF AUTHORITIES

Page

## CASES

*AT&T Corp. v. Microsoft Corp.*,
    2003 U.S. Dist. LEXIS 8710 (N.D. Cal. Apr. 18, 2003) .............................. 6, 7, 8, 10, 11

*Benge v. Superior Court*,
    131 Cal. App. 3d 336 (1982) ............................................................................ 4, 5, 9, 10

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004) ................................................................................. 12

*Cram v. Elec. Data Sys. Corp.*,
    2008 U.S. Dist. LEXIS 5703 (S.D. Cal. Jan. 23, 2008) .......................................... 11, 12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
    115 F.R.D. 308 (N.D. Cal. 1987) ................................................................................ 7, 8

*In re Grand Jury Subpoena*,
    406 F. Supp 381 (S.D.N.Y. 1975) .................................................................................. 7

*In re Grand Jury Subpoenas*,
    902 F.2d 244 (4th Cir. 1990) .......................................................................................... 7

*Lectrolarm Custom Sys. v. Pelco Sales, Inc.*,
    212 F.R.D. 567 (E.D. Cal. 2002) ................................................................................ 7, 8

*Modesto Irrigation Dist. v. Gutierrez*,
    2007 U.S. Dist. LEXIS 21949 (E.D. Cal. Mar. 8, 2007) ......................................... 7, 8, 9

*Nemirofsky v. Seok Ki Kim*,
    523 F. Supp. 2d 998 (N.D. Cal. 2007) ........................................................................ 4, 5

*Robin Singh Educ. Servs. v. Excel Test Prep.*,
    2004 U.S. Dist. LEXIS 23176 (N.D. Cal. Nov. 9, 2004) .............................................. 12

*U.S. v. LeCroy*,
    348 F. Supp. 2d 375 (E.D. Pa. 2004) .............................................................................. 7

*U.S. v. McPartlin*,
    595 F.2d 1321 (7th Cir. 1979), *cert. denied*, 444 U.S. 833 (1979) ................................ 7

*United States v. Ohio Edison Co.*,
    2003 U.S. Dist. LEXIS 25029 (S.D. Ohio Jan. 6, 2003) ............................................. 5, 7

## STATUTES

Cal. Evid. Code § 952 ............................................................................................................ 9

Cal. Evid. Code § 954 .................................................................................................... 5, 6, 9

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 26(g) .................................................................................................................... 11

Fed. R. Civ. P. 26(g)(1)(B)(ii)...................................................................................................... 11

Fed. R. Civ. P. 26(g)(3).................................................................................................... 1, 11, 13

Fed. R. Civ. P. 37(a)(5)(B)............................................................................................... 1, 11, 13

Fed. R. Civ. P. 45(c)(1) .................................................................................................... 1, 11, 13

**OTHER AUTHORITY**

Northern District Local Rule 37-2 ............................................................................................... 12

Northern District Local Rule 7-8 ................................................................................................. 13

Supreme Court Standard 503(b).................................................................................................... 8

DLA PIPER US LLP
EAST PALO ALTO

WEST\21467637.1 7/14/08
307537-930003

-iii-
AMENDED OPPOSITION TO MOTION TO COMPEL / CASE NO. 08-80126 MMC

Non-Party ZigBee Alliance ("ZigBee") hereby submits this Amended Opposition to the Motion to Compel filed by Plaintiffs IP Co., LLC and SIPCO, LLC (collectively, "IPCO"). This Amended Opposition is based on the present Memorandum and Points of Authorities, as well as the Declaration of William Chase ("Chase Decl."), previously filed, and the Declarations of Edgar Callaway ("Callaway Decl."), Skip Ashton ("Ashton Decl."), Brett Black ("Black Decl.") and Paul Taufer ("Taufer Decl.") filed herewith.

## I. INTRODUCTION

There is no legal or equitable basis upon which to grant the Motion to Compel. Given the fact that the patent claims in the present case are stayed, it is inexplicable why IPCO would: (1) serve a subpoena on ZigBee requesting patent documents which are privileged and completely unrelated to the patent at issue in this case, and (2) file a Motion to Compel on such documents. All of the documents requested by this Motion to Compel are irrelevant to the present proceeding, and moreover are subject to one or more of the attorney-client privilege, the work product privilege, and/or the common interest doctrine. In order to avoid this type of frivolous motion, ZigBee voluntarily agreed to produce some 737 documents which were requested by IPCO. Some months ago, ZigBee also provided IPCO with a detailed privilege log (the "Privilege Log") which included, *inter alia*, the privilege asserted for each of the documents at issue here. However, IPCO was not satisfied with the assertions of privilege therein, and instead chose to file this retaliatory motion for the sole purpose of harassing ZigBee.[1]

In accordance with the above, ZigBee seeks an Order: (1) denying IPCO's Motion to Compel, and (2) granting ZigBee leave to file a motion for sanctions pursuant to Federal Rules 26, 37 and 45, and Local Rule 7-8.

## II. BACKGROUND

### A. The ZigBee Alliance

At the turn of the century, wireless providers saw a need for a cost-effective, standards-

---

[1] These parties are not strangers to one another. In response to various threats and actions on the part of IPCO directed toward ZigBee and its members, ZigBee anonymously filed Requests for Reexamination of two of IPCO's patents in or around April 2006. ZigBee believes that the prior subpoena, and this Motion to Compel, are in direct response to ZigBee's actions.

based wireless networking solution that supported low data-rates, low-power consumption, security and reliability. See Chase Decl. ¶2. To achieve these goals, a non-profit corporation called the ZigBee Alliance was formed and incorporated in 2002. See Id. ¶3. ZigBee's goal was, and is, to provide consumers with the ultimate in flexibility, mobility, and ease of use, by building wireless intelligence and capabilities into everyday devices, such as broadband portals, utility metering systems and home thermostats. See Id. ¶4.

Since its formation, ZigBee has become a global organization of more than 270 member companies.[2] See Id. ¶5. ZigBee membership includes worldwide technology providers, such as Texas Instruments and Motorola, as well as smaller original equipment manufacturers. See Id. ¶6; Callaway Decl. ¶2.

### B.   IP Co., LLC and SIPCO, LLC

IP Co., LLC and SIPCO, LLC (collectively, "IPCO") are holding companies formed for the sole purposes of licensing and enforcing patents in the wireless technology field. See Taufer Decl. ¶¶8-9, Exs. C-D. IPCO neither manufactures nor sells products. See Taufer Decl. ¶9, Ex. D. Instead, IPCO generates revenue through the aggressive assertion of patents against companies (like ZigBee and its members) who actually invest in researching and developing technology for the everyday consumer. Id. In accordance with its business model, IPCO has filed numerous patent infringement lawsuits since 2005. See Taufer Decl. ¶10, Ex. E.

IPCO has specifically targeted ZigBee and its members for more than two years. For example, IPCO filed suit against Cellnet Technology, Inc. ("Cellnet"), a ZigBee member, on October 14, 2005. See Taufer Decl. ¶11, Ex. F.[3] Furthermore, the present suit is another action against Cellnet, and also includes counts against ZigBee member Hunt Technologies, LLC ("Hunt"). IPCO has also recently filed suit against ZigBee members Itron Inc., Eaton Corp. and Centerpoint Technology, Inc. See Taufer Decl. ¶13, Ex. H. Thus, it is clear that IPCO's business model is focused on litigating against the wireless community.

In response to IPCO's threats of litigation against ZigBee members, and in an effort to

---

[2] A list of all member companies is attached as Exhibit A to the Chase Decl. See Chase Decl. ¶ 7, Ex. A.
[3] ZigBee was aware of IPCO at least as early as April 2005, when IPCO brought suit against ZigBee member Elster Electricity LLC. See Taufer Decl. ¶12, Ex. G.

DLA PIPER US LLP
EAST PALO ALTO

WEST\21467637.1 7/14/08
307537-930003

-2-
AMENDED OPPOSITION TO MOTION TO COMPEL / CASE NO. 08-80126 MMC

1 protect such members, ZigBee consulted DLA Piper US LLP ("DLA Piper") regarding several of
2 IPCO's patents involved in a then-pending litigation against Cellnet in November 2005. See
3 Chase Decl. ¶¶8-10; Taufer Decl. ¶2; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl.
4 ¶¶2-3. In particular, DLA Piper reviewed US Pat. Nos. 6,044,062 (the "'062 Patent") and
5 6,249,516 (the "'516 Patent") (collectively, the "Reexamination Patents"). See Chase Decl. ¶10;
6 Taufer Decl. ¶2; Callaway Decl. ¶3; Ashton Decl. ¶3; Black Decl. ¶3. During this review
7 process, DLA Piper attorneys spoke with not only ZigBee personnel, but also with ZigBee
8 member personnel. See Chase Decl. ¶11; Callaway Decl. ¶3; Ashton Decl. ¶3; Black Decl. ¶3.

9 At the conclusion of DLA Piper's review, ZigBee filed for reexamination of the
10 Reexamination Patents at the United States Patent and Trademark Office ("USPTO"). See Taufer
11 Decl. ¶¶2-4. Subsequent to the USPTO authorizing reexamination of the Reexamination Patents,
12 a defendant in yet another patent infringement case filed by IPCO (Tropos Networks, Inc.) moved
13 to stay the action pending the outcome of the reexaminations. See Taufer Decl. ¶5, Ex. A at 1.
14 The court not only granted a stay of that action, but also *sua sponte* stayed another action
15 involving the same patents against ZigBee member Cellnet. See Id. at 4-5.

16 Shortly thereafter IPCO, now being temporarily foreclosed from proceeding with its
17 patent infringement counts on the Reexamination Patents, served subpoenas on ZigBee and others
18 in this action requesting documents regarding the reexaminations. See Taufer Decl. ¶16, Ex. K.
19 ZigBee timely and properly objected to the subpoena for, among other things, relevance because
20 the present case involves only US Pat. No. 7,103,511 (the "'511 Patent"), which is not one of the
21 Reexamination Patents.[4] See Taufer Decl. ¶6. IPCO withdrew the subpoena, and ZigBee
22 stipulated to the production of certain non-privileged materials as an alternative to a costly motion
23 to compel proceeding, which IPCO was threatening.[5] See Chase Decl. ¶14; Taufer Decl. ¶7. As
24 part of that production, ZigBee produced the Privilege Log which contains the documents at issue
25 here. See Taufer Decl. ¶14, Ex. I.

26
27 [4] The Court in this action has also bifurcated IPCO's patent and breach of contract claims, and stayed the patent claims. Documents related to the reexaminations of other patents could not possibly be relevant or probative on the breach of contract issues.
28 [5] As agreed by the parties, that production included the Privilege Log which is the subject of this motion.

It is clear to ZigBee that this Motion to Compel (and the earlier subpoena) comprise nothing more than the retaliatory tactics of a scorned patentee. The documents requested are not relevant to the issues in <u>this case</u>, and more importantly, are privileged. For the reasons expressed below, ZigBee asks the Court to deny IPCO's motion.

### III.    **MEMORANDUM AND POINTS OF AUTHORITIES**

All of the documents listed on ZigBee's Privilege Log are privileged under one or more of the attorney-client privilege, the work product privilege, and/or the common interest doctrine. The bulk of the communications in question relate to DLA Piper's analysis of the Reexamination Patents, and comprise correspondence directly between DLA Piper attorneys and ZigBee, or ZigBee's members. The remainder of the documents comprise communications between ZigBee members at the direction of DLA Piper attorneys, and are therefore at least attorney work product and/or common interest materials. For the reasons below, ZigBee requests that the Court deny the Motion to Compel and grant ZigBee leave to file a motion for sanctions pursuant to Rules 26, 37 and 45, and Local Rule 7-8.

####    A.    **The Attorney-Client Privilege Applies**

The attorney client privilege applies to most all of the withheld documents because in each case (1) DLA Piper was acting as attorney for ZigBee and its members, (2) ZigBee's members were acting for ZigBee (or its attorneys) in making the communications; (3) the communications are privileged under the common interest doctrine, and/or (4) the communications are privileged as permissible third party disclosures.

#####       1.    **DLA Piper Is Counsel To ZigBee And Its Members**

The attorney-client privilege applies when "(1) legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at the client's instance, permanently protected, (7) from disclosure by the client or by the legal advisor, (8) unless the protection be waived." <u>Nemirofsky v. Seok Ki Kim</u>, 523 F. Supp. 2d 998, 1000 (N.D. Cal. 2007) (citations omitted).

The attorney-client privilege serves to "promote the relationship between attorney and

1  client by safeguarding the confidential disclosures of the client and the advice given by the
2  attorney." Benge v. Superior Court, 131 Cal. App. 3d 336, 334 (1982).  Public policy supports a
3  liberal construction of the privilege, which must be zealously protected.  Id.; Nemirofsky, 523 F.
4  Supp. 2d at 1001.  In fact, "[a]lmost any act, done by the client in the sight of the attorney and
5  during the consultation, may conceivably be done by the client as the subject of a communication,
6  and the only question will be whether, in the circumstances of the case, it was intended to be done
7  as such." Benge, 131 Cal. App. 3d at 345 (citations omitted).

8       A "client" within the meaning of the attorney-client privilege can include "partnerships,
9  corporations, limited liability companies, associations and other groups and entities." Cal. Evid.
10 Code § 954 (2008).  In such a situation, the entity is the client and the attorney-client
11 communications are made through individuals acting for the entity.  Nemirofsky, 523 F. Supp. 2d
12 at 1001; see also Benge, 131 Cal. App. 3d at 348 (finding an attorney-client privilege with respect
13 to all communications made during a meeting between a union, its counsel and union members
14 regarding alleged lead dust at a plant); United States v. Ohio Edison Co., 2003 U.S. Dist. LEXIS
15 25029, at *11-12 (S.D. Ohio Jan. 6, 2003) (finding an attorney-client privilege for
16 communications involving an association, the association's members and counsel for the
17 association for issues common to some or all of the association's members).

18      In this case, DLA Piper was unquestionably acting as counsel not only for ZigBee, but for
19 ZigBee's members as well; this should end the inquiry.  ZigBee and its members shared the
20 common purpose of defending against patent suits from IPCO, and all of the communications at
21 issue here were privileged and confidential between DLA Piper, ZigBee and ZigBee members for
22 that express, common purpose.  At the time the advice was given, IPCO had already commenced
23 at least two suits against ZigBee members, and ZigBee and its other members believed that they
24 could be next.  It was directly out of this fear of suit that ZigBee consulted DLA Piper regarding
25 the Reexamination Patents.  Due to the clear implications for ZigBee's members, some members
26 chose to participate in these discussions.  See Chase Decl. ¶¶11-13; Callaway Decl. ¶¶2-3; Ashton
27 Decl. ¶¶2-3; Black Decl. ¶¶2-3.  All the parties involved understood the confidential and
28 privileged nature of the communications, and had an expectation of privacy.  See Chase Decl.

-5-

1  ¶¶15-16; Callaway Decl. ¶¶4-5; Ashton Decl. ¶¶4-5; Black Decl. ¶¶4-5.

2  The present situation is similar to that in <u>Ohio Edison</u>. In that case, communications between a trade association's counsel and its members, keeping the association's members apprised of government regulations, were found to be privileged. <u>Ohio Edison</u>, 2003 U.S. Dist. LEXIS 25029, at *11-12. In this case, DLA Piper is counsel to ZigBee, which is a trade association. Thus, communications between DLA Piper and ZigBee's members regarding the validity of IPCO's patents should likewise be privileged.

### 2. ZigBee's Members Were Acting for ZigBee

In addition to communications between attorney and client, the attorney-client privilege may also extend to communications <u>between non-lawyers</u> if the parties intend to seek legal advice regarding the communications. <u>AT&T Corp. v. Microsoft Corp.</u>, 2003 U.S. Dist. LEXIS 8710, at *7-8 (N.D. Cal. Apr. 18, 2003). These communications and any information compiled are privileged if "the legal implications were understood at the beginning of the inquiry and the communications were covered by a veil of confidentiality." <u>Id.</u> at *8.

Assuming there is no attorney-client privilege found between DLA Piper and ZigBee's members, the communications at issue between: (1) DLA Piper attorneys and ZigBee member personnel, and (2) among ZigBee and ZigBee member personnel should still be considered privileged because they all concerned the rendering of legal advice.[6] To wit, the purpose of these communications was legal advice regarding the Reexamination Patents. <u>See</u> Chase Decl. ¶¶8-11; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl. ¶¶2-3. At the time the advice was given, IPCO had already asserted the Reexamination Patents against ZigBee member Cellnet, and ZigBee was preparing for future litigation. <u>See</u> Chase Decl. ¶¶8-11; Callaway Decl. ¶2; Ashton Decl. ¶2; Black Decl. ¶2. Although some of the communications were solely between ZigBee members, those communications were taken at the direction of counsel, and/or for the express purpose of seeking legal advice. See, <u>AT&T</u>, 2003 U.S. Dist. LEXIS 8710 at *7-8; Chase Decl.

---

[6] The communications between ZigBee's counsel, ZigBee and/or ZigBee's members are found in documents 1-2, 4-5, 7-40, 43-55, 58, 63, 66, 69-141, 143, 146-152, 154-159, 162-164, 166, 169-171, 174, 176, 178-181, 184-210, 211-212, 215, 218-220, 222 and 224. The communications between ZigBee and ZigBee's members are found in documents 3, 6, 41-42, 56-57, 59-62, 64-65, 67-68, 142, 144-45, 153, 160-61, 165, 167-68, 172-73, 175, 177, 182-83, 213-14, 216-17, 221, 223.

¶¶11-13; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl. ¶¶2-3.

There is no question that all of the communications between DLA Piper, ZigBee and ZigBee members sought legal advice on the Reexamination Patents, from a professional legal advisor (i.e., DLA Piper) and were made in confidence.[7]

Under California Evidence Code § 954, ZigBee is considered a professional organization, which can only communicate with counsel through its representatives <u>and members</u>. As noted above, the attorney client privilege attaches to members of an association in communications with counsel for the association. See <u>Ohio Edison</u>, 2003 U.S. Dist. LEXIS 25029, at *11-12. Additionally, there has been no allegation by IPCO that ZigBee in any way waived its privilege with DLA Piper. With regard to communications between ZigBee members, these communications are also subject to the attorney-client privilege because the members understood that these communications were confidential, and intended to seek legal advice as the end result of the communications. <u>AT&T</u>, 2003 U.S. Dist. LEXIS 8710 at *7-8.

### 3. The Common Interest Doctrine Applies

Under the common interest doctrine, communications such as notes, memoranda, and statements made among counsel and their clients with a common interest are protected from disclosure. <u>In re Grand Jury Subpoena</u>, 406 F. Supp 381, 384-94 (S.D.N.Y. 1975). The reason for this rule is to allow persons who share a common interest in litigation to "be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." <u>In re Grand Jury Subpoenas</u>, 902 F.2d 244, 249 (4th Cir. 1990). It is not necessary that the two individuals or entities' interests be to be totally congruent for the privilege to apply. <u>U.S. v. McPartlin</u>, 595 F.2d 1321, 1336-37 (7th Cir. 1979) (citations omitted), <u>cert. denied</u>, 444 U.S. 833 (1979). Nor is it necessary for litigation to be pending against both parties, as the common interest privilege applies "whether an action is ongoing or contemplated." <u>In re Grand Jury Subpoenas</u>, 902 F.2d at 249; <u>Lectrolarm Custom Sys. v. Pelco Sales, Inc.</u>, 212 F.R.D. 567, 572 (E.D. Cal. 2002); see also <u>U.S. v. LeCroy</u>, 348 F. Supp. 2d 375, 381 (E.D. Pa. 2004)

---

[7] Even though it was not necessary given the circumstances, the persons participating in these communications from the ZigBee members were apprised of the confidential nature of the communications. See Chase Decl. ¶15; Callaway Decl. ¶4; Ashton Decl. ¶4; Black Decl. ¶4.

1  (stating "a person need not be a litigant to be a party to a going defense agreement" and noting
2  that the joint defense privilege applies to parties or potential parties <u>sharing a common interest in</u>
3  <u>the outcome of a particular claim</u>).

4  The common interest doctrine applies to a communication when "(1) [a] communication
5  is made by separate parties in the course of a matter of common interest; (2) the communication is
6  designed to further that effort; and (3) the privilege has not been waived." <u>Modesto Irrigation</u>
7  <u>Dist. v. Gutierrez</u>, 2007 U.S. Dist. LEXIS 21949, at *45-46 (E.D. Cal. Mar. 8, 2007) (citations
8  omitted); <u>see also</u> <u>Hewlett-Packard Co. v. Bausch & Lomb, Inc.</u>, 115 F.R.D. 308, 309-12 (N.D.
9  Cal. 1987) (holding that a disclosure to a non-party did not waive the attorney-client privilege);
10 Supreme Court Standard 503(b) (recognizing the common interest privilege).  A complete unity
11 of interests between the parties is not necessarily required, and common interest may exist even
12 where parties have substantially adverse interests.  <u>Modesto</u>, 2007 U.S. Dist. LEXIS 21949, at
13 *45-46.

14 For example, the common interest exception applies to communications between separate
15 government agencies.  <u>Modesto</u>, 2007 U.S. Dist. LEXIS 21949, at *55-56.  The common interest
16 exception also applies to communications with a non-party to litigation.  <u>Hewlett-Packard Co.</u>,
17 115 F.R.D. at 312; <u>AT&T</u>, 2003 U.S. Dist. LEXIS 8710 at *17; <u>Lectrolarm Custom Sys.</u>, 212
18 F.R.D. at 572.

19 In the instant case, even if there is no direct privilege found between DLA Piper and
20 ZigBee's members, the common interest doctrine extends the attorney-client privilege between
21 DLA Piper and ZigBee to encompass such communications.  These communications are subject
22 to the common interest doctrine because: (1) the parties share a common interest of protecting
23 against the threat of patent litigation by IPCO, (2) the communications were made in furtherance
24 of that common interest, and (3) the underlying attorney-client privilege, that IPCO admits exists,
25 between DLA Piper and ZigBee has not been waived.

26 As noted above, the communications at issue on the Privilege Log all relate to legal advice
27 regarding the Reexamination Patents and related litigation matters.  The common goal of ZigBee
28 and its members is to determine whether IPCO's patents are applicable to their technology, and

1  more importantly, if IPCO's patents are even valid. The only way to accomplish this was through
2  discussions between ZigBee, its counsel, and ZigBee's members. These communications
3  remained confidential as between ZigBee and its members, and were not disclosed to any other
4  parties. See Chase Decl. ¶16; Callaway Decl. ¶5; Ashton Decl. ¶5; Black Decl. ¶5.

5  As for IPCO's arguments, since there is no requirement that litigation be commenced
6  against parties with a common interest, the presence (or absence) of litigation between ZigBee, its
7  members and IPCO is irrelevant. The six 'elements' of common interest that IPCO lists in its
8  motion have no basis in law or statute. See Motion to Compel at 6. IPCO tacitly admits the same
9  by failing to provide any case sites supporting this bald assertion. In fact, the cases directly
10 contradict IPCO's statements. See, e.g., Modesto, 2007 U.S. Dist. LEXIS 21949, at *4-14 (no
11 reference to a joint defense agreement executed prior to application of common interest doctrine).
12 There are only three requirements for application of the common interest doctrine, they are listed
13 above, and ZigBee and its members have unquestionably met all three.

**4.   The Communications At Issue Are Permissible Third Party Disclosures**

16 In addition, the communications at issue may still be protected from disclosure as
17 permissible third party disclosures. As noted above, the attorney-client privilege includes
18 confidential communications between a client and their lawyer. Cal. Evid. Code § 954.
19 "Confidential communications" include communications to third parties when the third parties
20 "are present to further the interest of the client in the consultation of those to whom disclosure is
21 reasonably necessary for the transmission of the information or the accomplishment of the
22 purpose for which the lawyer is consulted." Id. § 952.

23 For example, the attorney-client privilege has been held to extend to communications
24 between an association's lawyers and its members even if alleged "non-essential" third parties
25 were present during the communications. Benge, 131 Cal. App. 3d at 342, 347. In Benge, the
26 defendants sought discovery of communications between union members and the union's
27 attorneys. Id. at 277. The union had held meetings to inform its members of their legal rights
28 concerning lead and dust conditions at a plant where the union members worked. Id. Counsel for

1  the union was present at the meetings, as were union members not involved in the pending
2  lawsuit. Id. at 342. The defendants argued that the presence of the union members who were not
3  also parties to the lawsuit, waived the attorney-client privilege. The court disagreed, and found,
4  *inter alia*, that (1) an attorney-client privilege existed between the separate union members and
5  the union's chosen counsel, and (2) the presence of the "non-essential" union members did not
6  waive the privilege because each had a common goal of receiving workers' compensation legal
7  advice. Id. at 347-48.

8  Assuming, *arguendo*, that communications between ZigBee's members and DLA Piper
9  are not privileged (a proposition directly contradicted by the holding in Benge), IPCO does not
10 dispute that communications between ZigBee and DLA Piper are privileged, and the inclusion of
11 the ZigBee members in those communications does not waive the privilege because the
12 participation of the ZigBee members was reasonably necessary to accomplish the intended goal
13 (i.e., assessing the litigation threat posed by IPCO and the validity of IPCO's patents). See Chase
14 Decl. ¶¶12-13; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl. ¶¶2-3. Much like the
15 presence of the non-party union members in Benge, the presence of ZigBee members was
16 essential to any discussion of IPCO and its patents.

### B. The Work Product Privilege Also Applies

18 Some of the documents listed in the Privilege Log are also privileged under the work
19 product privilege.[8] The work product privilege applies to "1) a document or tangible thing, 2)
20 which was prepared in anticipation [of litigation], and 3) was prepared by or for a party, or by or
21 for its representative." AT&T Corp. v. Microsoft Corp., 2003 U.S. Dist. LEXIS 8710, at *13
22 (N.D. Cal. 2003) (citations omitted).

23 Work product privilege extends not only to documents prepared for a party and its
24 representative, but also to documents prepared by non-parties. Id. at *16. The work product
25 privilege applies to third party documents if the third party "is in substance equally concerned
26 with the outcome of litigation and documents are created with an eye toward litigation." Id. at

---

[8] The work product privilege applies to at least documents 140, 145, 153, 160, 161, 165, 167, 168, 177, 182, 183, 221 and 223.

1  \*16 (citations and internal punctuation omitted).

2  In the instant case, the work product privilege applies because (1) the e-mails and attachments in question are clearly documents; (2) the e-mails and attachments were prepared in anticipation of litigation with IPCO; and (3) the e-mails and attachments were prepared by or for ZigBee, and/or by or for ZigBee's members. See Chase Decl. ¶¶8-13; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl. ¶¶2-3.

As noted above, prior to the communications at issue, IPCO had asserted the Reexamination Patents against various ZigBee members. See Chase Decl. ¶8; Taufer Decl. ¶¶11-13, Exs. F-H; Callaway Decl. ¶2; Ashton Decl. ¶2; Black Decl. ¶2. As a result of these assertions, ZigBee and several of ZigBee's members became concerned that IPCO would attempt to bring suit against them. See Chase Decl. ¶¶8-9; Callaway Decl. ¶2; Ashton Decl. ¶2; Black Decl. ¶2. To address this concern, ZigBee undertook a review of IPCO's patents (with the advice and assistance of DLA Piper), that involved an analysis of the validity of the patents. The communications and analysis lead directly to the filing of the requests for reexamination, which in turn lead to a stay of the above-referenced patent infringement action against ZigBee member Cellnet. Thus, it is clear that the e-mails and attachments at issue were all prepared in anticipation of litigation.

IPCO argues that the work product privilege is unavailable because ZigBee is not a party to the present case. See Motion to Compel at 7. However, as noted above, the work product privilege is available to non-parties if those parties are "equally concerned with the outcome of litigation and documents are created with an eye toward litigation." AT&T, 2003 U.S. Dist. LEXIS 8710, at \*13. ZigBee and its members are clearly concerned with the outcome of the present litigation, as well as the outcome of the various other litigations IPCO has levied against ZigBee members. See Chase Decl. ¶¶8, 12-13; Callaway Decl. ¶¶2-3; Ashton Decl. ¶¶2-3; Black Decl. ¶¶2-3. Accordingly, the work product privilege should apply to the above-referenced documents.

**C.  ZigBee is Entitled to Attorneys' Fees Under Rule 37**

The denial of a motion to compel entitles the non-movant to "reasonable expenses

1  incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B); see also
2  Cram v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5703, at *9 (S.D. Cal. Jan. 23, 2008)
3  (finding that a motion to compel was not meritorious and awarding reasonable expenses under
4  Rule 37(a)(5)(B)). A movant can escape this requirement only if the motion to compel is
5  "substantially justified or other circumstances make an award of expenses unjust." Id.

6  Moreover, the present motion comprises an abuse of the discovery process which is
7  sanctionable under one or more of Rules 26, 37 and 45. Discovery must be conducted in a
8  responsible manner. See, Fed. R. Civ. P. 26(g). Reasonableness extends to subpoenas, which
9  must be crafted to "avoid imposing undue burden or expense on a person subject to the
10 subpoena." Id. 45(c)(1). Moreover, discovery requests cannot be used improperly such as to
11 harass. Id. 26(g)(1)(B)(ii). Failure to adhere to these requirements may result in sanctions being
12 levied against the offending party. Id. 26(g)(3), 45(c)(1).

13 In the instant case, sanctions are warranted because IPCO's discovery demands on ZigBee
14 have been abusive and unnecessary. First, the information sought in the subpoena is in no way
15 relevant to the breach of contract claims now pending in this case. As noted above, the patent
16 claims in this case are for an entirely different patent – the '511 Patent – and in any event have
17 been stayed pending the outcome of the breach of contract claims. IPCO's service of the
18 subpoena on ZigBee is a direct violation of Judge Carnes' Order in the underlying Georgia
19 litigation,[9] not to mention a ham-handed attempt to obtain irrelevant information from a non-
20 party. In particular, the breach of contract claims are solely between IPCO and Cellnet, Tropos,
21 Hunt, and B&L, and communications between ZigBee, its counsel, and ZigBee's members
22 regarding the Reexamination Patents are in no way relevant to such claims.

23 Since the information sought in the subpoena and this Motion to Compel cannot in good
24 faith lead to the discovery of admissible evidence, and is patently irrelevant to the present
25 proceeding, it appears that the same were served either to harass ZigBee, or to improperly fish for
26 information to fuel additional lawsuits. See Robin Singh Educ. Servs. v. Excel Test Prep., 2004

---

[9] Judge Carnes ordered all patent-related discovery stayed in IP CO., LLC and SIPCO, LLC v. Cellnet Tech., Inc. et al. (1:06-CV-3048-JEC) on July 9, 2007. See Taufer Decl. ¶5, Ex. A.

1  U.S. Dist. LEXIS 23176, at *5 (N.D. Cal. Nov. 9, 2004) (denying a motion to compel a subpoena

2  response because the movant failed to meet its burden to show relevance); see also Collens v.

3  City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While Rule 26(b)(1) still provides for

4  broad discovery, courts should not grant discovery requests based on pure speculation that

5  amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to

6  the alleged claims or defenses"). Either way, the information sought is irrelevant and privileged,

7  and IPCO has no reasonable basis for demanding it.[10]

8      In sum, IPCO's service of the subpoena, and bringing of this Motion to Compel in the

9  face of an order staying all patent-related discovery, comprise an abuse of the discovery process

10 and should result in the imposition of sanctions against IPCO in the amount of ZigBee's

11 reasonable costs and attorneys' fees incurred in defending the Motion to Compel.[11]  Thus, if

12 IPCO's Motion to Compel is denied, ZigBee respectfully requests that the Court grant it leave to

13 file a sanctions motion pursuant to Federal Rules 26, 37 and 45, and Local Rule 7-8.

14 **IV.   CONCLUSION**

15     For the foregoing reasons, ZigBee respectfully requests that the Court: (1) deny IPCO's

16 Motion to Compel; and (2) grant ZigBee leave to file a motion for sanctions pursuant to Federal

17 Rules 26, 37 and 45, and Local Rule 7-8.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

---

[10] IPCO has similarly failed to address any of ZigBee's stated objections to the subpoena, as required under Local Rule 37-2, which states that motions to compel "must set forth each request in full, followed immediately by the *objections* and/or responses thereto." See L.R. 37-2 (emphasis added).

[11] IPCO has already been sanctioned $33,611.00 in a prior case against Cellnet for failing to advance claims relating to the '062 Patent (one of the Reexamination Patents), which forced Cellnet to file an unnecessary motion to dismiss. See Taufer Decl. ¶15.

1  Dated: July 14, 2008

2                                          DLA PIPER US LLP

3

4                                          /s/ Rajiv Dharnidharka
                                           Rajiv Dharnidharka
5                                          Attorney for ZigBee Alliance

6                                          Counsel for Non-Party ZigBee Alliance:

7                                          Paul A. Taufer
                                           Darius C. Gambino
8                                          Michael L. Burns IV
                                           DLA Piper US LLP
9                                          One Liberty Place
                                           1650 Market Street, Suite 4900
10                                         Philadelphia, PA  19103
                                           Tel. (215) 656-3300
11                                         Fax. (215) 656-2498 or 2499

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28