Lina M. Brenner (CA Bar No. 191075)
Antony L. Sanacory (GA Bar No. 625195)
Duane Morris LLP
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: (415) 957.3000
Facsimile: (415) 957.3001
Email: lmbrenner@duanemorris.com
       alsancory@duanemorris.com

Bruce P. Brown (GA Bar No. 064460)
McKenna Long & Aldridge LLP
Suite 5300, 303 Peachtree Street
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Email: bbrown@mckennalong.com

ATTORNEY FOR PLAINTIFFS
IP CO., LLC and SIPCO, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IP CO., LLC and SIPCO, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>CELLNET TECHNOLOGY, INC., TROPOS NETWORKS, INC., HUNT TECHNOLOGIES, LLC and B&L TECH COMPANY, INC.,<br><br>Defendants. | CASE NO. 08-mc-80126-MMC<br><br>CIVIL ACTION FILE NO.<br>1:06-CV-3048-JEC<br>United States District Court<br>For the Northern District of Georgia<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL NON-PARTY ZIGBEE ALLIANCE TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA**<br><br>Date: August 13, 2008<br>Time: 10:00 a.m.<br>Judge: Hon. Bernard Zimmerman |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

DM1\1368339.1

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  ISSUE FOR THE COURT TO DETERMINE. .......................................1

III. THE WORK PRODUCT DOCTRINE DOES NOT APPLY TO NON-PARTY ZIGBEE ................................................................................2

IV.  PLAINTIFFS' RECENT DISCOVERY INTO THE ALLEGED JOINT DEFENSE AGREEMENT CONFIRMS THAT ZIGBEE IS MISSTATING THEIR JOINT DEFENSE TEAM. ...................................4

V.   ZIGBEE'S STATED POLICIES CONTRADICT THEIR CURRENT LITIGATION POSITION THAT THEY ARE A CONFIDENTIAL LEGAL FORUM FOR THEIR MEMBERS. .......................................................6

VI.  THE COMMUNICATIONS ON THE ZIGBEE LOG ARE NOT PERMISSIVE THIRD-PARTY DISCLOSURES. ..........................................7

VII. RELEVANCE IS NOT A VALID BASIS UPON WHICH TO WITHHOLD THIRD-PARTY COMMUNICATIONS. ..........................9

VIII. CONCLUSION: PLAINTIFFS ARE ENTITLED TO DOCUMENTS AND ATTORNEYS FEES. ........................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Corp. v. Microsoft Corp.*
  2003 U.S. Dist. LEXIS 8710 .................................................................................................. 3

*Benge v. Superior Court*
  131 Cal. App. 3d 336 (1982) ............................................................................................. 8-9

*In re California Public Utilities Com'n*
  892 F. 2d 778 (9th Cir. 1989) .............................................................................................. 3

*Eisenberg v. Gagnon*
  766 F. 2d 770 (3rd Cir. 1985) .............................................................................................. 4

*Griffith v. Davis*
  161 F.R.D. 687 (C.D. Cal. 1995) ......................................................................................... 4

*United States v. Bergonzi*
  216 F.R.D. 487 (N.D. Cal. 2003) ........................................................................................ 4

**Other Authorities**

Federal Rule of Civil Procedure 26(b)(3) ................................................................................ 3

Federal Rules of Civil Procedure 26(b)(1) ............................................................................ 10

## I. INTRODUCTION

The ZigBee Alliance ("ZigBee") fails to meet its heavy burden of proving that the third party communications (*i.e.*, communications with someone other than counsel) requested by Plaintiffs IP Co., LLC and SIPCO, LLC ("Plaintiffs") and identified on ZigBee's privilege log are indeed privileged communications. As an initial matter, the work product doctrine is inapplicable to the third party communications as a matter of law. Moreover, recent discovery confirms that the attorney client privilege and in turn the joint defense doctrine are inapplicable. Multiple Zigbee members have produced documents responsive to the exact categories (and in some instances the exact documents) ZigBee claims to be privileged. In other words, ZigBee's representations that it had agreement as to a joint defense was not shared among the other would-be parties to the alleged agreement, and, therefore, no such privilege can apply. Finally, any objection concerning "relevance" of the requested documents was waived as part of the meet and confer.

## II. ISSUE FOR THE COURT TO DETERMINE.

The sole issue before this Court is whether ZigBee has met its heavy burden and established a valid basis for withholding two-hundred and twenty-three (223) third party communications (*i.e.*, communications with someone other than counsel) on the basis of privilege. As part of their discovery meet and confer, Plaintiffs and ZigBee already had agreed that ZigBee would produce documents responsive to each category of the Subpoena and that ZigBee would log as privileged ***only*** its third party communications that ZigBee intended to withhold on the basis of privilege. *See* Correspondence of Counsel at Exhibits A and B to the Declaration of Antony L. Sanacory ("Sanacory Decl."), filed herewith. Therefore, the dispute currently before the Court is about one thing – whether ZigBee has established that these third-party communications (the overwhelming majority of responsive documents)[1] are in fact privileged and can be withheld on that basis.

---

[1] While not outcome determinative, Plaintiffs point out that ZigBee did not produce 737 documents as ZigBee represents in its response brief. *See* ZigBee Brief at 1. In reality, ZigBee only produced 737 pages (not documents), and those pages consist of numerous copies of the same few email chains, including multiple copies of the emails

1
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

DM1\1368339.1

ZigBee's primary argument is that the documents on the ZigBee Log are all covered by a joint defense agreement and that DLA Piper was acting as counsel for all of ZigBee's members identified on the ZigBee Log. ZigBee did not provide a copy of the alleged joint defense agreement (or any details about it) during its meet and confer with Plaintiffs, has not provided one to the Court in connection with its briefing, and has not identified the joint defense agreement on the ZigBee Log. Moreover, *after* ZigBee's allegation in its opposition brief that each company identified on the ZigBee Log was part of a joint defense team (or were working for ZigBee's lawyers), several of these companies came forward with testimony and document productions (including some of the documents on ZigBee's Log), thereby disavowing any formal involvement as participants in ZigBee's joint defense team. Sanacory Decl., ¶¶ 8-9. These companies include Cellnet Technologies, Inc. (a member of ZigBee's board and the defendant that purportedly caused ZigBee to form its legal team), Southern California Edison and Daintree. A fourth production is expected shortly. Sanacory Decl., ¶ 9.

Since there is no evidence of any joint defense agreement, and Plaintiffs were put through considerable expense to prove that the alleged agreement does not exist, ZigBee should be required to produce the two-hundred and twenty-three (223) third party communications that ZigBee is wrongfully withholding. Plaintiffs further request leave to file a motion seeking an award of attorney's fees incurred as a result of both their efforts in conjunction with this Motion, and the conducting of additional discovery with the companies listed on the ZigBee Log, all necessitated by the improper withholding of the documents at issue.

### III. THE WORK PRODUCT DOCTRINE DOES NOT APPLY TO NON-PARTY ZIGBEE

As an initial and purely legal matter, ZigBee relies improperly on the work product doctrine. ZigBee correctly concedes that the underlying lawsuit is a contract/tortious interference action (ZigBee Brief at 3, *fn*. 4) involving, among other things, the Defendants' indirect support

---

between counsel for Plaintiffs and ZigBee. Sanacory Decl., ¶ 7. If the Court is inclined to inspect ZigBee's production, Plaintiffs will gladly provide a set for the Court's review.

for the reexamination (Defendant B&L Tech Company, Inc. ("B&L") is believed to have indirectly supported the reexamination during the time frame B&L was negotiating for and obtained a license to the Reexamination Patents, and during the general time frame that Plaintiffs and B&L had the same outside patent counsel). Also at issue in the underlying lawsuit is the value and scope of Plaintiffs' patent portfolio (which includes the Reexamination Patents), as perceived by both Plaintiffs and others in the industry. The patent infringement actions to which ZigBee claims an interest, as ZigBee correctly concedes, have no relation to the issues in the underlying lawsuit. *See* ZigBee Brief at 3, *fn*. 4. And even though ZigBee is not a party to the underlying lawsuit and has no interest in the underlying lawsuit (other than as a spectator), ZigBee relies largely on the work product protection under Federal Rule 26(b)(3) to be excused from producing responsive documents. *See* The ZigBee Log at Exhibit B to Lina Brenner's Declaration dated June 17, 2008 (last column of the ZigBee Log indicates that no less than seventeen (17) documents were withheld on the basis of work product). The Ninth Circuit Court of Appeals, however, has already instructed that the work product doctrine does not apply to non-parties to a litigation. *See In re California Public Utilities Com'n*, 892 F. 2d 778, 781 (9th Cir. 1989). The Ninth Circuit explained:

> Although some courts have extended the work product privilege outside the literal bounds of the rule, ***we conclude that the rule, on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought***.

*Id.* (emphasis added) (internal citations omitted).

Relying on *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710, ZigBee asserts that it has an interest in the outcome of the underlying lawsuit. *See* ZigBee Brief at 10. But the underlying lawsuit does not involve any claims of infringement of the Reexamination Patents or any conduct of ZigBee members for which there is a common interest (whether Defendants complied with their contractual obligations to Plaintiffs are not common to ZigBee or any other ZigBee members), and there is no active litigation involving Reexamination Patent claims against ZigBee or its members. Therefore, ZigBee has no interest in the underlying lawsuit, and, as a purely legal matter, production of the alleged work product on the ZigBee Log should be

compelled (items numbered 3, 6, 140, 142, 144, 145, 153, 160, 161, 165, 167, 168, 177, 182, 183, 221 and 223).

## IV. PLAINTIFFS' RECENT DISCOVERY INTO THE ALLEGED JOINT DEFENSE AGREEMENT CONFIRMS THAT ZIGBEE IS MISSTATING THEIR JOINT DEFENSE TEAM.

ZigBee members cannot be compelled to join ZigBee's legal efforts. The "joint defense" doctrine only protects communications between an individual and an attorney for another when the communications are part of an "on-going and joint effort to set up a common defense strategy." *Griffith v. Davis*, 161 F.R.D. 687, 695 (C.D. Cal. 1995) (*quoting Eisenberg v. Gagnon*, 766 F. 2d 770, 787 (3rd Cir. 1985). The "common interest" between the parties must be like the interest shared by "allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in certain other legal transactions…." *United States v. Bergonzi*, 216 F.R.D. 487, 496 (N.D. Cal. 2003). As several ZigBee members on the ZigBee Log already have confirmed that they do not assert being part of a joint legal effort to avoid producing responsive documents, there can be little doubt that the consensus alleged by ZigBee never existed. Sanacory Decl., ¶¶ 10-15.

Meet and confer discussions between Plaintiffs and ZigBee were brief: ZigBee asserted that there was a joint defense agreement between ZigBee and the companies identified on its privilege log, but ZigBee would not provide a copy of the alleged joint defense agreement or any details about it. ZigBee's response brief was the first explanation that Plaintiffs received. Thus, *because* ZigBee refused to provide a copy of its alleged joint defense agreement or any details regarding the existence of the alleged joint defense agreement (necessitating the current Motion), Plaintiffs served additional subpoenas on certain of the companies identified on the ZigBee Log. Plaintiffs also took additional discovery in the underlying lawsuit from Defendant Cellnet (a ZigBee board member on the ZigBee Log). Sanacory Decl., ¶ 8. These recent discovery efforts were aimed at the very same categories of documents listed on Schedule A to the ZigBee Subpoena.

The results of Plaintiffs' additional discovery confirm that the entire premise of ZigBee's joint defense/common interest privilege – a consensus that all were working toward a joint legal

4
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

DM1\1368339.1

end – was not formally obtained by the universe of ZigBee members claimed by ZigBee. For example, two of the companies listed on the ZigBee Log have produced a small collection of the actual emails listed on the ZigBee Log, and one more production is expected shortly. *See* true and correct copies of the initial productions which are attached to the Sanacory Decl. as Exhibits C and D. None of these respondents asserted that they view DLA Piper as their lawyers (*compare* Sanacory Decl., ¶ 13 *with* ZigBee's brief at 4) or that they were retained or working for ZigBee or its lawyers (*compare* Sanacory Decl., ¶ 13 *with* ZigBee's brief at 6). None of these ZigBee members asserted the common interest doctrine, the attorney-client privilege or work product doctrine as a basis for withholding some of the very documents listed on the ZigBee Log (*compare* Sanacory Decl., ¶ 14 *with* ZigBee's brief at 7-10). Indeed, SCE's counsel specifically reviewed its production, redacted an internal SCE communication with counsel, and specifically produced the exact and entire email that is listed on the ZigBee Log as item number 7. *See* (SCE documents, attached to the Sanacory Decl. as Exhibit C). To date, Plaintiffs have been unable to obtain the rest of the documents on the ZigBee Log through alternative means. Sanacory Decl., ¶ 16.

The documents ZigBee is withholding cannot fairly be described as privileged communications or work product. For example, item number 7 on the ZigBee Log (an email produced by Respondent Southern California Edison ("SCE")) reveals that ZigBee is withholding purely business emails on the basis of privilege. ZigBee stated in an email as follows:

> The ZigBee Alliance wishes to facilitate a call among some of the member companies to discuss some possible strategies around recent IPCO (aka IntuslQ http://theipco.com/home.html) activity.

(SCE documents, attached to the Sanacory Decl. as Exhibit C). These purely business documents contain no discussion of any advice of counsel or any agreement amongst the parties that they were working jointly toward a common legal end.

Finally, it is entirely irrelevant that "[a]t the time the advice was given, IPCO had already asserted the Reexamination Patent against ZigBee member Cellnet" (ZigBee Brief at 5) because Cellnet had not entered a joint defense/common interest arrangement with ZigBee. In an effort to understand Defendant Cellnet's involvement in ZigBee's alleged joint legal efforts, Plaintiffs have

5
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

conducted additional discovery in the underlying lawsuit (pending in the Northern District of Georgia). Sanacory Decl., ¶ 8. Cellnet has not produced a shred of evidence, through documents or the testimony of its officials that there is or ever was a joint defense agreement or that there was the expectation that its communications with ZigBee lawyers were confidential. Sanacory Decl., ¶ 10. ZigBee has not pointed to any such evidence. And, as noted above, ZigBee cannot now claim an interest in Cellnet's lawsuit if even Cellnet does not assert there is such an interest.

## V. ZIGBEE'S STATED POLICIES CONTRADICT THEIR CURRENT LITIGATION POSITION THAT THEY ARE A CONFIDENTIAL LEGAL FORUM FOR THEIR MEMBERS.

Quite the opposite of what ZigBee told the Court in its Brief, ZigBee internal policy appears to be that ZigBee members should not expect that communications between ZigBee and its members will be treated as confidential. ZigBee has posted on its website a copy of its member participation agreement, which contains a warning that members should not expect that information exchanged between ZigBee and its members would be treated as confidential. The Participation Agreement states in part as follows:

> **2) Confidential Information**
>
> Except as otherwise identified by Participant, any information Participant submits or discloses to the Alliance, including any committee or working group thereof, ***shall be treated as non-confidential and shall be available to all Participants and Promoter Members of the Alliance without restriction***. . . .

(ZigBee Participation Agreement, a true and correct copy of which is attached to the Sanacory Decl. as Exhibit E).

This warning to ZigBee that their communications will not be kept in secrecy are consistent with the stated purpose of ZigBee in ZigBee's Corporate ByLaws. According to the bylaws posted on ZigBee's website, ZigBee exists to permit open discussions of industry specifications to allow for uniformity among the industry and to promote the industry. (Corporate ByLaws of ZigBee Alliance, a true and correct copy of which is attached to the Sanacory Decl. as Exhibit F). There is no mention in the bylaws that ZigBee would undertake to defend its members (or that members agree to be represented by ZigBee counsel and join in ZigBee's legal efforts).

6
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

DM1\1368339.1

There is no reference on the ZigBee website that it has the authority or purpose of challenging the intellectual property of non-member competitors.

And a review of the actual documents listed on the ZigBee Log confirms that there was no expectation that the third-party communications listed on the ZigBee Log would be treated any differently. In an email produced by Respondent Daintree (item number 6 on the ZigBee Log), ZigBee reminded the recipients of the email that "***nothing should be in writing or email***," confirming that ZigBee *did not* expect that its correspondence with members would be entitled to privilege or work product protection in the context of litigation. ZigBee stated:

> A couple of quick reminders. We talked about this already, but you were asked to exam the patent in question at the request of ZigBee counsel – Dennis Gallitano and Paul Taufer. **Secondly nothing should be in writing or email. Third, there is a good chance counsel will join the call to remind you of same**.

(Daintree documents, attached to the Sanacory Decl. as Exhibit D) (emphasis added). If a joint defense agreement existed and this was merely a communication between counsel and clients, counsel would simply remind everyone of their obligations under the alleged "joint defense agreement" and encourage everyone to conduct themselves freely and openly. That is the primary purpose that the attorney-client privilege exists – to facilitate open communication between lawyers and their clients – and ZigBee and its counsel explicitly acknowledge that their aim was the opposite and that "nothing should be in writing or email."

Nowhere in any representation by ZigBee to prospective members (or the members listed on the ZigBee Log) is there any indication that ZigBee exists for any purpose other than the purely business purposes outlined above. ZigBee simply is not in the business of organizing members of an industry to take joint legal actions against competitors of the consortium, and if ZigBee stepped outside of its charter, their actions cannot now be shielded from discovery by asserting an after-the-fact joint defense/common interest privilege.

### VI. THE COMMUNICATIONS ON THE ZIGBEE LOG ARE NOT PERMISSIVE THIRD-PARTY DISCLOSURES.

Noting an exception to the rule that the attorney-client privilege does not attach to third-party communications, ZigBee relies on *Benge v. Superior Court*, 131 Cal. App. 3d 336

7
PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL
DM1\1368339.1

(1982) for the proposition that, even if these two-hundred and twenty-three (223) third-party communications are not privileged, they are exempted from disclosure because they are permissible third party disclosures necessary for DLA Piper's representation of ZigBee. *See* ZigBee Brief at 9. In *Benge*, there were two special meetings by sixty-five union members, union representatives and counsel that was retained by the union to represent the union members. The meetings were specially set on two occasions to discuss the union's and union members' legal rights regarding *existing claims* related to lead poisoning. *Benge*, 131 Cal. App. 3d at 339-343. The California Court of Appeals held that the union members were clients of the attorneys for purposes of those meetings, and that, therefore, the meetings were privileged communications. *Benge*, 131 Cal. App. 3d at 345-346.

Ironically, ZigBee's reference to *Benge* underscores precisely why there is no joint attorney-client privilege here. The union members in *Benge* were not industry competitors: they were workers at one factory that all had been exposed to lead poisoning. The union members were not meeting to discuss their general business concerns with the activities of a non-member competitor: they were there to discuss their lead poisoning legal claims. The union members had two special meetings to learn about their legal rights to one type of common claim. *Benge*, 131 Cal. App. 3d at 340.

None of the determining factors in *Benge* are present here. Here, there are two-hundred and twenty-three (223) communications (not two special meetings), and many of the communications on the ZigBee Log do not include counsel, or only copy counsel. ZigBee and its members, unlike the union, had a business reason for meeting: Plaintiffs offer technology that competes with the technology offered by the collective ZigBee members. This concern is reflected throughout the ZigBee Log communications that the ZigBee members produced. With only minor exceptions, at the time of the communications on the ZigBee Log, there were no claims asserted by or against the participating ZigBee members, so they would have no reason to meet and seek the assistance of counsel. Finally, unlike the union members in *Benge*, numerous ZigBee members have come forward with responsive documents without any assertion that they

viewed DLA Piper as their lawyers. In sum, there simply is no basis to extend the attorney-client privilege to ZigBee's third-party communications.

## VII. RELEVANCE IS NOT A VALID BASIS UPON WHICH TO WITHHOLD THIRD-PARTY COMMUNICATIONS.

Any objection based on relevance has been waived and does not constitute a permissible basis for withholding of the documents at issue.

Counsel for Plaintiffs and ZigBee already agreed that ZigBee would produce documents responsive to all three categories of the Subpoena; relevance was not a basis for withholding any of them. Instead, counsel for Plaintiffs and ZigBee had numerous discussions about the underlying lawsuit, and ZigBee's counsel was made aware of the assertions in such lawsuit that Plaintiffs believed that Defendants actively encouraged the reexamination of Plaintiffs' patents at the same time Defendants had contractual obligations to Plaintiffs. Separately at issue in the underlying lawsuit are the efforts that were made to determine the coverage and value of Plaintiffs' patent portfolio, which includes both the Reexamination Patents and the patents issued in the name of T. David Petite, SIPCO's CEO and one of its founding members. Sanacory Decl. at ¶ 2. On May 21, 2008, counsel for Plaintiffs wrote as follows:

> This letter is in reference to the subpoena served by Plaintiffs on ZigBee in the above-referenced lawsuit (the "Civil Action"). The parties agreed that Plaintiffs would review ZigBee's initial production of documents responsive only to category 3 of the subpoena before revisiting the issue of whether Plaintiffs would require production of documents responsive to categories 1 and 2 of the subpoena. We have reviewed the documents produced by ZigBee. Based on this review and our review of documents produced from other sources, it is clear that documents responsive to categories 1 and 2 of the subpoena directly bear on claims and defenses in the Civil Action, and that ZigBee is the most logical source of such documents. Therefore, we ask that ZigBee complete its production of all non-privileged documents, including documents responsive to categories 1 and 2 of the subpoena, by no later than Friday, May 30, 2008.

Sanacory Decl., ¶ 3. After sending that letter, Plaintiffs' and ZigBee's counsel exchanged voicemails and agreed that ZigBee would produce documents responsive to each category of the Subpoena. After the exchange of messages, Plaintiffs counsel wrote as follows:

> Plaintiffs agree to your proposed production date of June 6, 2008. Plaintiffs also agree to your request that ZigBee not be put through the expense of preparing and producing a privilege log, so long as we are in agreement on the issue you and I

> discussed on the telephone regarding the extent of the privilege. We do not believe that there would be any basis to assert a privilege for communications with (or that were shared with) members of ZigBee. In other words, the attorney-client privilege does not extend to any communications to/from, CC'ing or shared in any way with a member of ZigBee, and we would expect that all such communications be produced. So long as we have agreement on this, Plaintiffs are willing to forego a privilege log.

Sanacory Decl, ¶ 4. ZigBee's counsel then responded as follows:

> This seems acceptable to ZigBee. However, as I mentioned on your voicemail, we would like a procedure in case any of those documents you referenced are claimed as privileged. Thus, if we claim any of the referenced documents between ZigBee and its members are privileged, is it acceptable to Plaintiffs if we produce a privilege log limited to those documents, if any?

Sanacory Decl., ¶ 5. Plaintiffs counsel agreed to the procedure for logging third-party communications, and those communications are the subject of the current Motion. Sanacory Decl., ¶ 6.

Finally, and as explained above, the sought for information and documents are indeed relevant to the claims of the underlying lawsuit; but even if they were not, such "relevance" objection is not a permissible basis upon which to withhold the documents. It is well established that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b)(1).

**VIII. CONCLUSION: PLAINTIFFS ARE ENTITLED TO DOCUMENTS AND ATTORNEYS FEES.**

As it now appears that there never was a joint defense agreement as ZigBee purports, and that numerous documents on the ZigBee Log were withheld without any legal basis, Plaintiffs respectfully request that the Court grant the motion to compel and enter an Order as follows:

(1) ZigBee must produce all of the third-party communications on its privilege log; and

///
///
///
///
///
///
///

(2) ZigBee may have leave to file a motion seeking sanctions in the form of Plaintiffs' attorneys' fees incurred in conjunction with this Motion and Reply Brief, and additional third party discovery efforts that were necessary to refute ZigBee's representations to the Court that they were party to a joint defense agreement.

Dated: July 23, 2008                                    DUANE MORRIS LLP


       /S/ LINA M. BRENNER
Lina Brenner
Attorney for Plaintiffs

Counsel for Plaintiffs IP CO., LLC and SIPCO, LLC in the Georgia Case:

Bruce P. Brown
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000
(404) 527-4198(facsimile)

Antony L. Sanacory
DUANE MORRIS LLP
1180 West Peachtree Street, Suite 700
Atlanta, Georgia 30309
(404) 253-6900
(404) 253-6901(facsimile)